**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

KAREN J. KILPATRICK,
     Plaintiff,

                                 Docket No.:   3:06-CV-158

     v.
                                   Judge:        LAC/MD

THE UNITED STATES OF AMERICA;
CRAIG W. ROEGNER, Special Agent,
Bureau of Alcohol, Tobacco & Firearms
("ATF"), in his individual capacity;
THE CITY OF PENSACOLA;
AMANDA GRIFFETT, PETER FAULK,
JAMES ANDREWS, BRAD BUDDIN,
and HARRY P. BARRACLOUGH JR., in their
individual capacities; and
UNKNOWN ATF SPECIAL AGENTS and
CITY OF PENSACOLA EMPLOYEES,
     Defendants.

_____/

**PLAINTIFF'S AMENDED RESPONSE IN OPPOSITION TO**
**DEFENDANT UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT**

     COMES NOW, Plaintiff, pursuant to Fed. R. Civ. P. 56, and hereby opposes Defendant

United States of America's Motion for Summary Judgment, and as grounds therefore states:

PROCEDURAL HISTORY

     This is a response to a Motion for Summary Judgment filed by Defendant United States

of America (hereafter the U.S.).  The nature of Plaintiff's claims are violations of her clearly

established constitutional, civil, and statutory rights, including, but not limited to, freedom of

speech, freedom from unreasonable search and seizure, false imprisonment, and due process of

law.  The claims against the U.S. arises under the Federal Tort Claims Act, 28 U.S.C. §§ 2671, et

seq. (hereafter FTCA).

     The affidavit of Defendant Roegner offered by Defendant United States of America is the

same affidavit as that offered by Defendant Roegner in his Motion for Summary Judgment.  (See Doc. No. 28, Exhibit 1 and Doc. No. 52, Exhibit 1.)  Therefore, Plaintiff would renew and adopt her amended motion to strike paragraphs 3 and 4 of Defendant Roegner's statement because the statements do not show affirmatively that Defendant Roegner is competent to testify to the matters stated therein, and such statements do not appear to be based on personal knowledge, but rather on information provided by others.[1]  (See Doc. No. 41.)

Plaintiff previously filed a motion to refuse judgment or for a continuance to permit further discovery because there were facts that she could not present by her affidavit which included statements made by and to Defendant Roegner in an audio tape recording of his phone calls to the City of Pensacola Police Department and statements made by Defendant Peter Faulk in a police report.  (See Doc. No. 42.)  However, the government subsequently stipulated to the admissibility of the evidence in question (Doc. No. 45, page 5.), and this Court denied Plaintiff's motion (Doc. No. 50).  Therefore, for the sake of argument in this response, Plaintiff will assume that those statements are admissible.

---

[1]  In its response to Plaintiff's Amended Motion to Strike, the government presumes that "what the plaintiff is attempting to assert is that the statements to which she objects contain hearsay."  (Doc. No. 46, page 2.)  However, as noted in her motion, Plaintiff's objection is that Defendant Roegner, the affiant, lacks personal knowledge of the facts, which the government then uses to justify Defendant Roegner's actions.  (Doc. No. 41.)  Fed. R. Civ. P. 56(e) states that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  In other words, the only facts admissible in a summary judgment motion affidavit are those facts within the personal knowledge of the affiant.

In paragraph 3, Defendant Roegner states "[t]he FBI reported . . ." and in paragraph 4, Defendant Roegner states "[e]arlier that same day, ATF had also received information . . ."  In both statements, it is obvious that Defendant Roegner has no personal knowledge of the facts, therefore, he is not competent to testify to those facts and "[s]uch affidavits have no probative value on a motion for summary judgment."  Mercantile Nat. Bank at Dallas v. Franklin Life Ins. Co., 248 F.2d 57. 59 (5th Cir. 1957).

## STATEMENT OF FACTS

The statement of the facts relied upon by the U.S. is incomplete and in some respects misleading. Accordingly, Plaintiff wishes to clarify the record and pursuant to N.D. Fla. Loc. R. 56.1, has filed herewith a statement of material facts as to which there exists genuine issues to be tried and would incorporate by reference this statement.

## SUMMARY JUDGMENT STANDARD

A court may grant summary judgment only if "there is no genuine issue as to any material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986); Lee v. Ferraro, 284 F.3d 1188, 1190 (11 Cir.2002); F.R.C.P. 56. An issue of fact is "material" if it might affect the outcome of the case under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. Id., see also Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986).

The burden rests on the moving party to demonstrate the lack of a genuine issue of fact. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The record must be viewed in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Summary judgment is improper "[i]f a reasonable fact finder could draw more than one inference from the facts, and that inference creates a genuine issue of material fact." Cornelius v. Highland Lake, 880 F.2d 348, 351 (11th Cir.1989).

ARGUMENT

In her complaint (Doc. No. 1), Plaintiff sued the U.S. under the FTCA.

A.     A Federal Law Enforcement Officer Has No Discretion to Disregard the
       Constitution and Illegally Detain a Citizen Peaceably Exercising Her First
       Amendment Rights

While it is true that the discretionary function exception to the Federal Tort Claims Act

precludes suit for "[a]ny claim . . . based upon the exercise or performance or the failure to

exercise or perform a discretionary function or duty on the part of a federal agency or an

employee of the Government, whether or not the discretion involved be abused," this exception

applies only so long as the employee or official is performing, or failing to perform, a

discretionary function.  (28 U.S.C. § 2680(a).)  "Government conduct does not involve an

element of judgment or choice if there is a statute, regulation, or policy that requires the

employee to follow a specific course of action." Mesa v. U.S., 123 F.3d 1435, fn. 4 (11th Cir.

1997) (citing United States v. Gaubert, 499 U.S. 315, 322, 111 S.Ct. 1267, 1273 (1991)

Plaintiff has alleged in her complaint, and in her Response in Opposition to Defendant

Roegner's Motion for Summary Judgment, Defendant Roegner's conduct was  unconstitutional

and that no reasonable officer would have believed that there was a legal justification to stop and

question Plaintiff.  (See Doc. No. 1, para. 51-52 and Doc. No. 37, pages 6-16.)  Further, not one

of the Defendants has proffered evidence that there is specific law, regulation, and policy that

allowed Defendant Roegner's actions.[2]  This is because both the U.S. Constitution and Florida

_____

[2]  At this stage of the proceedings, a Motion for Summary Judgment by the federal
defendants prior to any discovery, it should be the federal defendants responsibility to proffer
such law, regulation, and policy.  The ATF, as many law enforcement agencies, has extensive
rules and internal orders that guide and govern its agent actions.  For example, an ATF order -
Searches and Examinations, ATF Order O 3220.1 - places agents on notice that they might be

law specifically prohibited Defendant Roegner's actions.

The Fourth Amendment of the U.S. Constitution states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." In this case, there was no warrant and no probable cause or even reasonable suspicion, and the U.S. fails to make a convincing argument to the contrary.

The U.S. cites § 901.151. Fla. Stat., Florida "Stop and Frisk Law," which states, in relevant part:

> (2) Whenever any law enforcement officer of this state encounters any person under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state or the criminal ordinances of any municipality or county, the officer may temporarily detain such person for the purpose of ascertaining the identity of the person temporarily detained and the circumstances surrounding the person's presence abroad which led the officer to believe that the person had committed, was committing, or was about to commit a criminal offense.
> (3) No person shall be temporarily detained under the provisions of subsection (2) longer than is reasonably necessary to effect the purposes of that subsection. Such temporary detention shall not extend beyond the place where it was first effected or the immediate vicinity thereof.
> (4) If at any time after the onset of the temporary detention authorized by subsection (2), probable cause for arrest of person shall appear, the person shall be arrested. If, after an inquiry into the circumstances which prompted the temporary detention, no probable cause for the arrest of the person shall appear, the person shall be released.
> (5) Whenever any law enforcement officer authorized to detain temporarily any person

---

liable for executing a manifestly invalid warrant. The order in force in 1997 warned: "Special agents are liable if they exceed their authority while executing a search warrant and must be sure that a search warrant is sufficient on its face even when issued by a magistrate." See <u>Groh v. Ramirez</u>, 540 U.S. 551, 564, 124 S.Ct. 1284, 1294 (2004)

However, if the Court believes that Plaintiff must cite such law, regulation, and policy, Plaintiff moves this Court, pursuant to Fed. Civ. P. 56(f), to order a continuance to permit further discovery.

under the provisions of subsection (2) has probable cause to believe that any person whom the officer has temporarily detained, or is about to detain temporarily, is armed with a dangerous weapon and therefore offers a threat to the safety of the officer or any other person, the officer may search such person so temporarily detained only to the extent necessary to disclose, and for the purpose of disclosing, the presence of such weapon. If such a search discloses such a weapon or any evidence of a criminal offense it may be seized.

Defendant Roegner violated this statute in almost every possible way. Defendant Roegner had no reason to believe, and articulated no facts or circumstances that support any reasonable suspicion, that Plaintiff 'had committed, was committing, or was about to commit' a violation of any criminal law. He wanted to stop the vehicle to find out who was driving it, "that's all I know" and "it's no big deal." Both Defendants Roegner and Griffett struggled to justify the stop - Defendant Griffett asked Defendant Roegner "are you thinking this is an officer safety issue?" Defendant Roegner replied "well, " paused, said "yeah" and *then laughed*. He said that they wanted to stop the van and find out who it was. Defendant Roegner then stated that "I just wanted to make sure that if somebody has a problem, I just wanted to make sure that I let somebody know that . . . let me know and we will move on it if there is an issue . . . nobody is in trouble or anything." **This statement summarizes this case, Defendant Roegner wanted Plaintiff stopped because "nobody is in trouble or anything" but he (Defendant Roegner) "just wanted to make sure that I let somebody know that . . ."** Defendant Roegner's specific purpose was left unsaid at that time, but becomes readily obvious from his statements to Plaintiff after she was stopped. In a hostile and intimidating manner, Defendant Roegner told Plaintiff that the statements on her van upset other ATF agents, "who had friends who died at Waco," or words to that effect. Defendant Roegner said to Plaintiff "Where else do you have to go today . . . When you get home you make sure you wash that [referring to the statements] off your

windows," or words to that effect.

Further, Defendant Roegner temporarily detained Plaintiff longer than was "reasonably necessary" to effect the purposes of the stop and "after an inquiry into the circumstances which prompted the temporary detention, [where] no probable cause for the arrest" appeared, she was not immediately released. Finally, there was no "probable cause to believe that" Plaintiff was "armed with a dangerous weapon and therefore offered a threat to the safety of the officer or any other person," therefore, no search should have been conducted. Plaintiff denies that she posed a danger to anyone and states that Defendant Roegner did not act as if he believed that Plaintiff posed any threat. Even Defendant Roegner admits that it was during the conversation that he was told that Plaintiff had a permit to carry a concealed weapon. Until that point he had no concern that Plaintiff was armed and dangerous, and the only evidence he had was that Plaintiff had a permit, not that she appeared to be armed. He never asked Plaintiff if she had a gun or where the gun was located. In fact, it was some significant time after the stop that he wanted to search the vehicle. Plaintiff denies that she voluntarily consented to the search, and the government bears the burden of proving otherwise.

A federal law enforcement officer has no discretion to disregard the Constitution and ask a state law enforcement agency to illegally stop and detain a citizen peaceably exercising her First Amendment rights, especially as in this case where the target of the protest is the federal agency for which the officer works. Defendant Roegner's actions were limited by the Constitution and Florida law. Under the facts asserted by Plaintiff, Defendant Roegner's actions were not supported by reasonable suspicion and violated the Fourth Amendment. "No reasonable officer could claim to be unaware of the basic [Fourth Amendment law and] rule. . .

Because not a word in any of our cases would suggest to a reasonable officer that this case fits within any exception to that fundamental tenet, petitioner is asking us, in effect, to craft a new exception. Absent any support for such an exception in our cases, he cannot reasonably have relied on an expectation that we would do so." <u>Groh v. Ramirez</u>, 540 U.S. 551, 564-5, 124 S.Ct. 1284, 1294 (2004)

Further, the cases that the U.S. cite are taken out of context[3], and none of these cases allows a federal law enforcement officer the power to illegally stop and detain a citizen peaceably exercising her First Amendment rights.  For example, in <u>Hart v. U.S.</u>, 894 F.2d 1539, (11th Cir. 1990), the court granted summary judgment in favor of the government in a FTCA action for intentional infliction of emotional distress brought by the wife, mother, and daughter of an American flyer shot down over Laos during the Vietnam conflict.  In their complaint, plaintiffs alleged that the Army and Air Force knowingly made a false positive identification of the flyer's remains, that they persisted in this identification in spite of overwhelming evidence to the contrary, that they improperly issued an "ultimatum" about burial, and that they refused to return the flyer to unaccounted-for status after rescinding his identification. The court stated that "the discretionary function exception does not apply if a government policy specifically prescribes an action and that policy is violated," but agreed that summary judgment was appropriate because the government's actions did not violate a specific policy.  <u>Id</u>. at 1546-7.  The nature of the plaintiffs' claims in <u>Hart</u> was not of the same character as of Plaintiff's claims, which are violations of her clearly established constitutional, civil, and statutory rights, including, but not limited to, freedom of speech, freedom from unreasonable search and seizure, false

---

[3]  The U.S. did not analyze, explain, compare, and contrast the many cases it cited.

imprisonment, and due process of law.

In <u>Mesa v. U.S.</u>, 123 F.3d 1435 (11th Cir. 1997), the Court dismissed, for lack of subject matter jurisdiction, a FTCA action against Drug Enforcement Administration (DEA) agents who arrested a person in a case of mistaken identity where the agents had a warrant for a person of the same name.   However, the Court stated explicitly that it did "not decide the question of whether all actions taken in deciding when and how to execute an arrest warrant are subject to the discretionary function exception. Instead, [the court addressed] the narrower question of whether the process of locating and identifying the subject of an arrest warrant is within the discretionary function exception." <u>Id</u>. at 1437.  This case is unlike the <u>Mesa</u> case, Defendant Roegner was not trying to locate and identify 'the subject of an arrest warrant,' there was no warrant issued for Plaintiff.

In <u>Alfrey v. United States</u>, 276 F.3d 557 (9th Cir. 2002), the appellate court found that the district court erred when it ruled that there was no genuine issue of material fact as to whether the government had a nondiscretionary duty to perform a screening evaluation of a state inmate before assigning him to a cell with a federal inmate, because under certain circumstances agency regulation imposed an obligation to perform the evaluation when making a cell assignment.  The court further stated that "[o]nly those exercises of judgment which involve considerations of social, economic, and political policy are excepted from the FTCA by the discretionary function doctrine.  [Citation omitted.]  The primary focus of the second part of the test is on 'the nature of the actions taken and on whether they are susceptible to policy analysis.'"   <u>Alfrey</u>, 276 F.3d at 560 (Citing <u>Weissich v. United States</u>, 4 F.3d 810, 814 (9th Cir. 1993) and <u>United States v. Gaubert</u>, 499 U.S. 315, 325 (1991)).  Contrast that case with <u>Calderon v. United States</u>, 123 F.3d

947 (7th Cir. 1997) where the appellate court affirmed a summary judgment in favor of the government, finding that an inmate's FTCA claims against the United States were barred where federal regulations vested discretion in the prison officials to determine how to address an inmate's report of a threat.

Here, there are no considerations of social, economic, and political policy.  As noted above, the government cites no law, regulation, and policy that allows a federal law enforcement officer to disregard the Constitution and ask a state law enforcement agency to illegally stop and detain a citizen peaceably exercising her First Amendment rights just because he has been 'tasked' to track down and investigate a vehicle with statements protesting his agency's actions at Waco, and "find out what the hell is going on."  Plaintiff is not aware of any policy, and the U.S. cites none, that would allow Defendant Roegner's actions.

Quite the contrary, 28 U.S.C. § 2680(h) states that the U.S. may be sued for false imprisonment, false arrest, and abuse of process when the tortfeasor is a federal law enforcement officer.[4]  And as a court has noted, "the Committee amendment [to § 2680(h) ] would submit the Government to liability whenever its agents act under color of law so as to injure the public through search and seizures that are conducted without warrants or with warrants issued without probable cause."  O'Ferrell v. U.S., 968 F.Supp. 1519, 1531 (M.D.Ala. 1997) (citing S.Rep. No.

---

[4]  In Florida, false imprisonment is identical to false arrest. Card v. Miami Dade County Florida, 147 F. Supp. 2d 1334, 1347 (S.D. Fla. 2001).  And false imprisonment is a detention without legal authority that occurs when "there is an improper restraint which is not the result of a judicial proceeding."  Id. (citing Jackson v. Navarro, 665 So.2d 340, 342 (Fla. 4th DCA 1995) and William L. Prosser, Law Of Torts § 119 (4th ed.1971)).

-10-

588, at 3 (1973), reprinted in 1974 U.S.C.C.A.N. 2789, 2791.)[5]   In O'Ferrell, the court denied

summary judgment where there were genuine issues of material fact as to whether federal law

enforcement agents conducted a search with a warrant that might have been invalid.  In that case,

the government did not cite any basis justifying a warrantless search, and the court did not find

any such basis upon independent review.  Therefore, because the plaintiffs had submitted

affirmative evidence that the search warrant for their business was invalid for lack of probable

cause, and because there is no evidence before the court suggesting that a warrantless search of

the Plaintiffs' business was justified, the plaintiffs have shown that a genuine issue of material

fact exists as to whether the search of their business was unconstitutional, and the claim was not

precluded under discretionary function exception to the FTCA.  O'Ferrell, 968 F.Supp. at 1531-

34.  The court stated specifically that an officer has no discretion to conduct a criminal

investigatory search pursuant to a warrant invalidated due to a Franks violation where no basis

justifying a warrantless search exists, whether or not the officer knew or had reason to know that

the warrant was invalid."  Here, Defendant Roegner detained and searched Plaintiff without a

warrant.  Further, the government did not cite any basis justifying Defendant Roegner's actions

and Plaintiff has submitted affirmative evidence that the detention and search were invalid.  The

Plaintiff's claims are not precluded under discretionary function exception to the FTCA and

---

[5]   In its Motion for Summary Judgment, the U.S. states "Because of the violence associated with that particular date, all law enforcement officers were in a state of heightened awareness. ATF and other Federal and State agencies increase security and employee awareness on anniversaries of major historical events, such as Waco and Oklahoma City."  And based on this statement, the U.S. argues that Defendant Roegner's action were reasonable.  (Doc. No. 51, page 7-8.)  However, there is no factual basis for this statement, and the statement and related argument should be disregarded.  Moreover, a 'heighten alert' does not otherwise validate First and Fourth Amendment violations.

genuine issues of material facts preclude summary judgment .

This is not a case where there was an arrest pursuant to a properly issued warrant after a three month investigation into allegations made from a confidential source, requiring policy judgments by a DEA agent "to balance the desire to keep the confidential source and the investigation secret, his available resources, and the information at hand with the ability to obtain additional information" as in Nguyen v. Estate of Carlisle, 2006 U.S. Dist. LEXIS 38394. Similarly, this is not a case as in Rourke v. United States, 744 F. Supp. 100 (E.D. Pa. 1988), aff'd, 909 F.2d 1477 (3d Cir. 1990), where an individual claims to have been arrested and charged due to a flawed investigation that resulted in the issuance of an arrest warrant.  In that case, it should be noted, the court did not dismiss the claim alleging an assault during the course of the arrest.  And this is also not a case of negligence in the preparation of a search warrant, as in Doherty v. United States, 905 F. Supp. 54 (D. Mass. 1995).

Here, unlike those cases, Defendant Roegner requested and participated directly in the stop of a citizen protesting against his agency.  He had no information at hand, from a confidential source or otherwise, that justified a stop.  He never sought a warrant of any type, which would have allowed a review by a neutral and detached magistrate. He told the PPD that someone was protesting Waco and that the FBI had seen the van.  Defendant Griffett responded "the FBI saw it and they didn't do anything about it?"  Defendant Roegner paused, and asked "are we being recorded?"  Defendant Griffett said "yes" and Defendant Roegner responded "so, anyways, I'm trying to find out more information."  Not only did he not seek a warrant, Defendant Roegner knew that another federal law enforcement agency took no action at all on the matter.  Defendant Roegner's call was not an investigation, it was a request, without any

justification, to detain Plaintiff.  "Defendant Roegner's actions were part of an effort by him, and other unknown ATF agents, to silence Plaintiff, and harass, embarrass, and intimidate her." (Doc. No. 1, para. 53.) Because of what she was saying about the ATF.  These allegation are substantially different than those made in <u>Nguyen, Rourk</u>e, or <u>Doherty</u> and summary judgment would be inappropriate.  And where an officer participates in the violation of a constitutional right, a claim for an intentional tort is not precluded by the discretionary function exception of the FTCA.  <u>Chandler v. U.S.</u>, 875 F.Supp. 1250, 1266 (N.D.Tex.1994) (Where the court allowed a claim for malicious prosecution after a special agent of the Office of Inspector General of the General Services Administration (GSA) participated in bringing charges against GSA employees without probable cause, particularly where the agent gave false testimony and withheld material information from prosecutor and grand jury.)

This is also not a case of state law tort claims of Haitian refugees, based on their alleged unlawful detention following their entry into United States, that arose from exercise or performance of discretionary function on part of government because the refugees were excludable aliens.  Excludable aliens "have no constitutional rights with regard to their applications and must be content to accept whatever statutory rights and privileges they are granted by Congress." <u>Adras v. Nelson</u>, 917 F.2d 1552, 1555 (11th Cir. 1990)  Nor is this a personal injury action where the court might find that decisions whether to repair a roadway and whether to post warning signs were within discretionary function exception to the FTCA.  <u>Bessie Joyce Davis v United States</u>, 918 F. Supp. 368 (N.D. Fla. 1996).

The U.S. reliance on <u>Pooler v. United States</u>, 787 F.2d 868, 871 (3rd Cir. 1986), is also misplaced.  There, the appellate court stated that the complaints did not state claims that fell

within the proviso to § 2680(h) because the federal officer was not alleged to have committed a tort in the course of a search, seizure, or arrest.  However, it stated that "[r]eading the intentional tort proviso as limited to activities in the course of a search, a seizure or an arrest as a practical matter largely eliminates the likelihood of any overlap between section 2680(a) and section 2680(h).  It is hard to imagine instances in which the activities of officers engaging in searches, seizures or arrests would be anything other than operation."  Id. at 872.  Here, Defendant Roegner is alleged to have committed an intentional tort in the course of a seizure and search, and his actions were operational in nature, not discretionary.

"[T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive."  Berkovitz v. United States, 486 U.S. 531, 536, 108 S. Ct. 1954, 1959 (1988).  And "conduct cannot be discretionary if it violates the Constitution." United States Fid. & Guar. Co. v. United States, 837 F.2d 116, 120 (3d Cir.), cert. denied, 487 U.S. 1235 (1988))  Put another way, "[f]ederal officials do not possess discretion to violate constitutional rights or federal statutes." Medina v. United States, 259 F.3d 220, 225 (4th Cir. 2001.)  And "[a] government official has no discretion to violate binding laws, regulations, or policies that define the extent of his official powers."  Red Lake Band of Chippewa Indians v. U.S., 800 F.2d 1187, 1196.

Defendant Roegner's statement of facts is most noticeable for what it fails to state – articulable suspicion that criminal activity is afoot.  For that reason, the U.S. Constitution and Florida state law did not allow Defendant Roegner's actions, and he had no right to ignore these limits on government authority.

-14-

B.      Defendant Roegner Has No Immunity Under 28 USC § 2679 For Liability in His
        Individual Capacity Pursuant to Bivens

The U.S. next seeks to substitute itself, pursuant to the Westfall Act[6], for Defendant

Roegner.  However, in her complaint, Plaintiff sued Defendant Roegner for violation of her

constitutional rights and stated that "Defendant Roegner may be held liable in his individual

capacity in accordance with the Court's decision in Bivens v. Six Unnamed Agents of the Federal

Bureau of Investigation, 403 U.S. 388 (1971)."   The Westfall Act does not apply to claims

alleging the violation of constitutional rights, and thus, the U.S. can not be substituted for the

employee.  Anderson v. Government of the Virgin Islands, 199 F.Supp.2d 269, 274 (D.Virgin

Islands 2002.)  The U.S. and its employees can be named as separate defendants in cases where

an employee is alleged to have committed a constitutional tort.  Sterling v. U.S., 85 F.3d 1225,

1228-9 (7th Cir. 1996.)

Therefore, Plaintiff would object to the proposed substitution and the dismissal of

Defendant Roegner.

C.      Plaintiff Has Properly Alleged Violations Under State Law Pursuant to the FTCA

Plaintiff would agree with the U.S. that the FTCA provides that the United States shall be

liable for tortious actions to the same extent as a private individual under like circumstances. 28

U.S.C. § 2674.  And under the FTCA, the law of the State where the alleged tortious act or

omission occurred determines whether liability exists. 28 U.S.C. § 1346(b). (See Doc. No. 51,

pg. 9.)  As discussed below, Plaintiff believes that she has properly alleged violation of state law.

However, where this Court finds otherwise, Plaintiff would move to amend her complaint to

---

[6]  28 USC § 2679

state a proper claim.

    1.    <u>Plaintiff's Claim for False Imprisonment Should Not Be Dismissed</u>

As noted above, 28 U.S.C. § 2680(h) states that the U.S. may be sued for false imprisonment, false arrest, and abuse of process when the tortfeasor is a federal law enforcement officer.  Under Florida law, a plaintiff "must prove (1) intent to confine, (2) acts resulting in confinement, and (3) consciousness of the victim of confinement or resulting harm." <u>Ortega v. Christian</u>, 85 F.3d 1521, 1526 (11th Cir. 1996).  Plaintiff would also agree with the U.S. that she must show an "unlawful arrest and confinement without legal authority" (<u>Erp v. Carroll</u>, 438 So. 2d 31, 40 (Fla. 5th DCA 1983)) and "that the detention was unreasonable and unwarranted under the circumstances." <u>Rivers v. Dillards Dep't Store</u>, 698 So. 2d 1328, 1331-1332 (Fla. 1st DCA 1997).  However, under both Florida and federal law, "[t]he movant for summary judgment must demonstrate the absence of genuine issues of material fact, and in reviewing summary judgment, this court must view the record in the light most favorable to the non-moving party." <u>Id</u>. at 1332.

According to Plaintiff's affidavit, Defendant Roegner's actions were part of an effort by him, and other unknown ATF agents, to silence, harass, embarrass, and intimidate Plaintiff.  She states so directly, and it is a reasonable inference from the following facts.  She is an outspoken critic of the ATF's handling of the 51 day siege of the Branch Davidian compound in Waco, Texas, which ended on April 19, 1993, with the death of numerous Branch Davidians, including children.  On April 19, 2004, she was peacefully exercising her First Amendment rights by driving her van within the City of Pensacola with "Remember the Children of Waco" and "Boo A.T.F." written on some of the van's windows.  Defendant Roegner called the PPD and stated that the ATF wanted to stop the van and find out who it was.  Defendant Roegner told Defendant

Griffett that if the Police Department stopped the van and called him, he would come to the scene.  He then gave Defendant Griffett his cell phone number.

Defendant Roegner then stated that "it's no big deal, I just wanted to make sure that if somebody has a problem, I just wanted to make sure that I let somebody know that . . . let me know and we will move on it if there is an issue . . . nobody is in trouble or anything." **This statement summarizes this case, Defendant Roegner wanted Plaintiff stopped because "nobody is in trouble or anything" but he (Defendant Roegner) "just wanted to make sure that I let somebody know that . . ."** Defendant Roegner's specific purpose was left unsaid at that time, but becomes readily obvious from his statements to Plaintiff after she was stopped.  In a hostile and intimidating manner, Defendant Roegner told Plaintiff that the statements on her van upset other ATF agents, "who had friends who died at Waco," or words to that effect. Defendant Roegner said to Plaintiff  "Where else do you have to go today . . . When you get home you make sure you wash that [referring to the statements] off your windows," or words to that effect.

The facts stated above are the facts according to Plaintiff's affidavit, and in many material respects contradicts those asserted by Defendant Roegner.  Under these facts, Defendant Roegner's actions were not supported by reasonable suspicion and violated the Fourth Amendment.  Under the circumstances, Defendant Roegner's actions were unreasonable, unwarranted, unlawful, and without legal authority.  The resolution of any conflict with Defendant Roegner's statement is a matter of a credibility determination and it is improper for the district court to make credibility determinations on a motion for summary judgment. <u>Rollins v. TechSouth, Inc.</u>, 833 F.2d 1525, 1531 (11th Cir.1987).  If this court were to grant the U.S.'s

motion for summary judgment, it would necessarily have to accept Defendant Roegner's version as true.   Whether the event unfolded as portrayed by the Plaintiff or by Defendant Roegner is for the trier of fact to determine at trial. Therefore, the U.S. is not entitled to summary judgment and the motion for summary judgment should be denied.

      2.    <u>Defendant Roegner's Actions Were an Invasion of Plaintiff's Privacy</u>

      Under Florida law, "four types of wrongful conduct that can all be remedied with resort to an invasion of privacy action are: (1) appropriation-the unauthorized use of a person's name or likeness to obtain some benefit; (2) intrusion-physically or electronically intruding into one's private quarters; (3) public disclosure of private facts-the dissemination of truthful private information which a reasonable person would find objectionable; and (4) false light in the public eye-publication of facts which place a person in a false light even though the facts themselves may not be defamatory." <u>Agency for Health Care Admin. v. Associated Indus. of Fla., Inc.</u>, 678 So.2d 1239, 1252 n. 20 (Fla. 1996).   Invasion of privacy is a separate and distinct cause of action from libel or slander.   Three of the four types of invasion of privacy do not reference any type of false information or defamation.  <u>Id</u>.   Only false light invasion of privacy contemplates any issue of falsehood; and even then, the tort may exist when the facts published are completely true.

      Here, Plaintiff has alleged facts which constitute both intrusion and false light. Defendant Roegner physically intruded into Plaintiff's privacy by searching her car and purse without a warrant, probable cause, or other justification.   Such claims have been allowed in a similar claim.   As noted above, where plaintiffs have shown that a genuine issue of material fact exists as to whether a search was unconstitutional, an invasion of privacy claim is not barred by the FTCA.  <u>O'Ferrell</u>, 968 F.Supp. at 1531.

Furthermore, Plaintiff alleged that Defendant Roegner's actions were part of an effort by him, and other unknown ATF agents . . . embarrass" her.  (Doc. No. 1, para. 53.)  Plaintiff did not seek the 'public gaze' in the manner that Defendant Roegner forced upon her that day.  She was merely exercising her constitutional right of free speech.  Defendant Roegner, conducting the stop and search on a public road in full view of a TV camera, published facts which placed Plaintiff in a false light, implying to the public that she was a common criminal and posed a danger to the public.  Of particular note, Defendant Roegner's actions were themselves unconstitutional, and an abuse of his police authority, and the facts suggest that he intended to send a message to Plaintiff or anyone who protested his agency.  Plaintiff responded as any innocent citizen would, she  told the camerawoman that the only reason that she had been pulled over was because of what she had written on the windows of her van and that the incident was a violation of her "freedom of speech."  The U.S. should not be permitted to claim no harm was done because Plaintiff chose not to cower and grovel, but rather defended her actions to Defendant Roegner and the public.  It is a gross mischaracterization of the facts to say, as the U.S. states in its brief, that Plaintiff got what she wanted.  (Doc. No. 51, pg. 13.)

Therefore, the U.S. is not entitled to summary judgment and the motion for summary judgment should be denied.

3.    Defendant Roegner's Actions Were Negligent

Plaintiff makes a claim of negligence as an alternate theory of liability should her intentional tort claims fail.  Plaintiff would agree with the U.S. that "[t]o succeed on a negligence claim in Florida, Plaintiff must 'show that the defendant owed a duty of care to the plaintiff, that the defendant breached the duty, that the breach caused plaintiff's injury, and that damages are

owed.'" <u>Miles v. Naval Aviation Museum Found., Inc.</u>, 289 F.3d 715, 722 (11th Cir. 2002),

quoting <u>Ewing v. Sellinger</u>, 758 So. 2d 1196, 1197 (Fla. 4th DCA 2000).  However, Florida law

also provides that "[n]egligence is the failure to use that degree of care, diligence and skill that is

one's legal duty to use in order to protect another person from injury.  The degree of care required

is ordinary and reasonable care according to a particular set of circumstances.  The law, however,

will demand from a person with knowledge, skill or intellect superior to that of the ordinary man,

conduct which is consistent with his individual ability.  Professional individuals in general and

those who undertake any work or calling for which a special skill is required have a duty not only

to exercise reasonable care in what they do, but also to possess a standard minimum of special

knowledge and ability." <u>Miriam Mascheck, Inc. v. Mausner</u>, 264 So. 2d 859 (Fla. 3rd DCA 1972)

     The Florida Supreme Court "has repeatedly held that governmental liability may exist

when the act of the government or its agent is non-discretionary, but operational in nature.

[Citations omitted]  As used in this context, the court explained that the term 'discretionary'

means that the governmental act in question involved an exercise of executive or legislative

power such that, for the court to intervene by way of tort law, it inappropriately would entangle

itself in fundamental questions of policy and planning. [Citation omitted]  An 'operational'

function, however, is one not necessary to or inherent in policy or planning, but merely reflects a

secondary decision as to how those policies or plans will be implemented." <u>Brown v.</u>

<u>Miami-Dade County</u>, 837 So.2d 414, 418 (Fla. 3rd DCA 2001)

     Defendant Roegner is presumed to be a professional law enforcement officer with the

knowledge, skill and intellect required of the position.  No doubt he is required to follow a

standard minimum of special knowledge and ability.  As noted above, Defendant Roegner's

actions were operational in nature, committed in the course of a seizure and search, and not

discretionary.  The Fourth Amendment, and related statutes, regulations, and agency policies,

define the duty of care.  Defendant Roegner failed to use reasonable care in performing his duties

and his actions caused Plaintiff harm.

      "Florida courts have experienced no difficulty . . . in placing on police officers a duty not

to deprive those with whom they come in contact of their constitutional rights of privacy,

integrity of person, and so forth."  <u>Florida First Nat. Bank of Jacksonville v. City of Jacksonville</u>,

310 So.2d 19 (Fla. 1st DCA 1975) See also <u>Modlin v. City of Miami Beach</u>, 201 So.2d 70, 76

(Fla. 1967)     In <u>Thompson v. City of Jacksonville</u>, 130 So.2d 105 (Fla. 1st DCA 1961), cert.

denied, 147 So.2d 530 (Fla.1962), the court held that a complaint, charging that city police

officers who broke into and searched a home with negligent disregard for a plaintiff's right to

privacy, causing her great mental and physical pain and suffering, alleged an unintentional act of

negligence and was sufficient to state a cause of action for invasion of right of privacy.

      Therefore, the U.S. is not entitled to summary judgment and the motion for summary

judgment should be denied.

     4.    <u>Defendant Roegner's Actions Were Intentional and Outrageous and Therefore,
Plaintiff's Claim for Emotional Distress Should Not Be Dismissed</u>

      "To prove intentional infliction of emotional distress under Florida law, the plaintiff must

prove: (1) deliberate or reckless infliction of mental suffering; (2) by outrageous conduct; (3)

which conduct must have caused the suffering; and (4) the suffering must have been severe. . .

Conduct is intentional '[w]here the actor knows that [severe] distress is certain, or substantially

certain to result from his conduct'. . . Outrageous conduct is conduct which 'is so outrageous in

-21-

character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Hart v. U.S., 894 F.2d 1539, 1548 (11th Cir. 1990) (Citations omitted.)  However, the Court also stated that "[t]o grant summary judgment on such a claim, the district court must find that there is no genuine issue of material fact regarding the claim."  Id.

Here there is evidence that Defendant Roegner's actions were deliberate, outrageous and intentional, and caused severe suffering.  Defendant Roegner deliberately called the PPD and asked that Plaintiff be stopped.  Defendant Roegner laughed while discussing the matter with the police dispatcher and stated "I just wanted to make sure that if somebody has a problem, I just wanted to make sure that I let somebody know that . . ." without finishing his statement.  Plaintiff was stopped by the PPD, was clearly upset, and told the officer she was afraid of the ATF.  In a hostile and intimidating manner, Defendant Roegner told Plaintiff that the statements on her van upset other ATF agents, "who had friends who died at Waco," or words to that effect.  Defendant Roegner said to Plaintiff  "Where else do you have to go today . . . When you get home you make sure you wash that [referring to the statements] off your windows," or words to that effect.  During the encounter, Plaintiff became distraught and started crying.  Based on these facts, Defendant Roegner knew, or should have known, that his conduct would cause Plaintiff distress.  And abuse of police authority and violation of a citizen's basic First and Fourth Amendment rights is intolerable in a civilized nation.

For these reasons, the U.S. is not entitled to summary judgment and the motion should be denied.

-22-

<u>CONCLUSION</u>

For the above reasons, there are genuine issues of material fact in this case.  Accordingly,

Defendant United States of America's motion for summary judgment is not well taken and

should be denied.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court deny

Defendant's motion for summary judgment.

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court
on this the 6th day of December, 2006, using the CM/ECF system, which will send notification of
such filing to Assistant United States Attorney Leah Ann Butler and John W. Jolly by electronic
delivery.

s/ Bert Oram
_____

BERT ORAM
Attorney for Plaintiff
Florida Bar Number 0615439
AMOND & ORAM, P.A.
314 S. Baylen Street, Suite 112
Pensacola, FL 32502
(850) 497-7048