## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

KAREN J. KILPATRICK,

      Plaintiff,

v.                                           Case No. 3:06cv158/LAC

THE UNITED STATES OF AMERICA;
CRAIG W. ROEGNER, Special Agent,
Bureau of Alcohol, Tobacco & Firearms
("ATF"), in his individual capacity;
THE CITY OF PENSACOLA;
AMANDA GRIFFETT, PETER FAULK,
JAMES ANDREWS, BRAD BUDDIN,
and HARRY P. BARRACLOUGH JR., in their
individual capacities; and
UNKNOWN ATF SPECIAL AGENTS and
CITY OF PENSACOLA EMPLOYEES,

      Defendants.
_____/

## ORDER ON SUMMARY JUDGMENT

      Pending before the Court are Motions for Summary Judgment filed by Defendants Craig W. Roegner (Doc. 27), the United States of America (Doc. 51) and Unknown ATF Special Agents (Doc. 53), and documents in support thereof (Docs. 28, 52). Plaintiff timely filed memoranda and evidentiary materials in opposition (Docs. 35, 37, 65-67, 81). Plaintiff also filed a Motion To Strike (Doc. 41), to which Defendant Roegner responded (Doc. 46). The Court has taken the matter under advisement and is now prepared to rule on the motions.

# I. BACKGROUND

The facts of this case are not free from dispute, and in keeping with summary judgment analysis, all reasonable constructions will favor Plaintiff's version of the facts. On April 19, 2004, Plaintiff was driving her blue van in the City of Pensacola, Florida, with "Remember the Children of Waco" and "Boo ATF" written on some of the van's windows. April 19 marks the date in which the Federal Bureau of Investigation (FBI) and the Federal Bureau of Alcohol, Tobacco and Firearms (ATF) conducted a siege of the Branch Davidian Church in Waco, Texas, which resulted in the deaths of numerous church members, including children and church leader David Koresh. Plaintiff came to the attention of Defendant Craig W. Roegner, a Special Agent employed in the ATF office in Pensacola, when an FBI agent had noticed the van enter and drive about the parking lot of a building housing various federal offices, including the ATF and FBI. Earlier that day, ATF also received information from an individual who claimed to have been assaulted and threatened by a person driving a blue van who allegedly "had links" with the Branch Davidian Church.[1]

Tasked with investigating the van and its driver, and deeming the information to create an officer safety issue, Roegner contacted the Pensacola Police Department, requesting that they find and stop the vehicle and then notify him. The police dispatch officer put out an alert for the vehicle. Shortly thereafter, Plaintiff was stopped not far from the ATF

---

[1] Evidently, information had also been received that a van resembling Plaintiff's had been seen at the home of an unnamed individual who was allegedly a gun dealer who had sold guns to David Koresh. Plaintiff denies that she was involved in any assault or threat against any person on that day, and states that Agent Roegner never asked her about any of these incidents during the vehicle stop that was to ensue.

building, evidently by Pensacola Officers Faulk and/or Barraclough. Plaintiff was informed,

evidently by Officer Faulk, that "someone" wanted to talk with her, and when she asked who,

Officer Faulk placed his hand on his gun, prompting Plaintiff to keep her hands in plain

view.

Shortly thereafter, Roegner arrived, and Officer Barraclough provided him with

Plaintiff's license and registration. According to Plaintiff, although she was upset at being

stopped and told the police she was afraid of the ATF, Roegner ordered Plaintiff out of the

van and questioned her at length about what was written on the van, and then searched her

and her vehicle without her voluntary consent. Plaintiff alleges she was never told that she

was not under arrest. In an allegedly hostile and intimidating manner, Agent Roegner told

Plaintiff that the statements on her van upset other ATF agents who had friends who died at

Waco. Plaintiff states that none of her actions constituted a threat to anyone and that Agent

Roegner did not act as if he believed she or her vehicle posed any threat. A camerawoman

from a local news station arrived at the scene, and Plaintiff told her that the only reason she

had been pulled over was because of what she had written on the windows of her van.

Roegner subsequently told Plaintiff she was free to leave and advised her to wash off the

writing on her windows.[2]

---

[2] By contrast, Defendants state that Roegner returned Plaintiff's license and registration to her, explained to her that she was not under arrest, and did advise her that "driving around a federal building with the type of words she had on her van was going to make people nervous." Doc. 28, ex. 1 at 2. Defendants further state that Plaintiff exited her van and freely spoke with Roegner about the ATF and David Koresh. Plaintiff admitted she had driven into the ATF building parking lot but denied knowing that the ATF and FBI were located in the building.

Roegner called the ATF office and was informed that Plaintiff had a concealed weapons permit.

## II. Motion for Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "[T]he substantive law will identify which facts are material" and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *See id.*

At the summary judgment stage, a court's function is not to weigh the evidence to determine the truth of the matter, but to determine whether a genuine issue of fact exists for trial. *See id.* at 249, 106 S. Ct. at 2510–11. A genuine issue exists only if sufficient evidence is presented favoring the nonmoving party for a jury to return a verdict for that party. *See id.* "If reasonable minds could differ on the inferences arising from undisputed facts, then

---

Roegner asked her if there was anything in the van that could hurt someone, and she said no. Plaintiff then consented to the search of her van and her person. The search revealed a loaded revolver in Plaintiff's purse and a loaded ammunition magazine in the glove box of the van. The firearm was unloaded and returned to her purse.

      Roegner acknowledges that Plaintiff spoke with the local news media, but while Plaintiff complained about the ATF's actions during the Waco siege, Roegner did not hear her complain about being stopped and searched. Roegner asked Plaintiff if she felt she had been treated respectfully during the stop, and she answered that she had. Plaintiff then said she had to leave and asked Roegner if there was anything he wanted her to do about the writing on her van. He responded that she was free to do what she wanted but that the writing might make some people nervous. Police records indicate that the officers were on the scene for one hour and seven minutes.

a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust Co. v. Fidelity and Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).

When assessing the sufficiency of the evidence in favor of the nonmoving party, the court must view all the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party." *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993). The court is not obliged, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is "merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249–50, 106 S. Ct. at 2511. "A mere 'scintilla' of evidence supporting the . . . [nonmoving] party's position will not suffice" to demonstrate a material issue of genuine fact that precludes summary judgment. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (quoting *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512).

## III. Discussion

As is relevant to the motions, in Count One Plaintiff raises constitutional claims against Defendant Roegner that his actions violated her First Amendment rights to free speech and her Fourth Amendment right to be free from unreasonable search and seizure. She also raises federal claims of false imprisonment and due process of law. In Count Three, which is raised against the Defendant United States, Plaintiff raises federal tort claims of

false imprisonment, negligence, intentional infliction of emotional distress and invasion of privacy.

## A. Claims against Defendant Roegner

### 1. Qualified Immunity

As an initial matter, Defendant Roegner asserts that he is entitled to qualified immunity. To defeat qualified immunity, it must be shown that 1) the plaintiff's constitutional rights were violated and 2) that those rights were clearly established at the time of the alleged violation. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). It is well settled that "[q]ualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Therefore, this court must first determine whether the facts, read in the light most favorable to Plaintiff, establish that Defendant Roegner's actions amounted to a deprivation of her constitutional rights.[3]

---

[3] As in the analogous action against a state officer under 42 U.S.C. § 1983, in an action against a federal official under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the initial inquiry must focus on whether two essential elements are present:

1. whether the conduct complained of was committed by a person acting under color of federal law; and

2. whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*See Hartman v. Moore*, 547 U.S. 250, 255 n.2, 126 S.Ct. 1695, 1700 n.2 (2006); *Wilson v. Layne*, 526 U.S.

If the answer is yes, the court must then decide whether those rights were clearly established at the time of the events alleged by Plaintiff. *See McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999). In analyzing whether a right was clearly established, the Court should consider whether pre-existing law at the time of the alleged acts provided fair warning to Defendant that his actions were unconstitutional. *See Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508, 2516, 153 L.Ed.2d 666 (2002). If it would be clear to any reasonable officer in the same situation that his actions were unconstitutional, then qualified immunity is not available, but if "officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

### 2. Fourth Amendment Claim

Plaintiff claims that Defendant Roegner by his actions violated her rights under the Fourth Amendment. The Fourth Amendment prohibits unreasonable searches and seizures, and its proper invocation depends on the nature of the search or seizure as well as the factual circumstances surrounding it. *See United States v. Gordon*, 231 F.3d 750, 754 (11th Cir. 2000). Defendant contends that stopping Plaintiff under the circumstances was entirely reasonable under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). "[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when

---

603, 609, 119 S.Ct. 1692, 1696-97, 143 L.Ed.2d 818 (1999); *Parratt v. Taylor*, 451 U.S. 527, 535 (1981).

the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 120 S. Ct. 673, 675, 145 L. Ed. 2d 570 (2000) (citing *Terry*).

Although there are no rigid limitations as to the permissible duration or scope of a *Terry* stop, because of the noncustodial nature of the investigation, it is designed to be as brief and nonintrusive as possible. *See United States v. Sharpe*, 470 U.S. 675, 685, 105 S.Ct. 1568, 1575 (1985); *United States v. Hardy*, 855 F.2d 753, 759 (11th Cir. 1988). The detention must last no longer than is necessary to effectuate the purpose of the stop; otherwise, the situation ripens into a full-scale arrest in which probable cause is required. *Sharpe*, 470 U.S. at 685, 105 S.Ct. at 1575; *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325-26 (1983). "Several issues and circumstances are deemed relevant to the analysis, including the law enforcement purposes served by the detention, the diligence with which the police pursue the investigation, the scope and intrusiveness of the detention, and the duration of the detention." *Hardy*, 855 F.2d at 759 (citing *Sharpe*, 470 U.S. at 685-86, 105 S.Ct. at 1575). The objective is to verify or dispel the officer's suspicion in as short a time as necessary. *See Sharpe*, 470 U.S. at 686, 105 S.Ct. at 1575; *Royer*, 460 U.S. at 500, 103 S.Ct. at 1325-26. "A *Terry* stop is justified to give the police an opportunity to engage in brief and nonintrusive investigation techniques, such as noncustodial questioning of the detained person." *Hardy*, 855 F.2d at 759. Ordinarily, law enforcement officials may not conduct a thorough search of the individual or his or her property during a *Terry* stop. *See Royer*, 460 U.S. at 500; 103 S.Ct. 1319, 1325.

Under Plaintiff's version of the facts, Officer Roegner's detainment of Plaintiff exceeded the scope of *Terry*.  While the length of detention is not alone determinative, Plaintiff was held for over an hour with very little to show for it as far as investigative outcome.  While Plaintiff and Roegner apparently spoke at length, Defendant provides little in the way of detail to show the necessity of the long duration, of the danger that was suspected and then evidently allayed.  More importantly, Defendant contends only that it was necessary to search Plaintiff and her vehicle, essentially because she had a weapons permit. While Plaintiff was indeed found to have a weapon, and evidently the permit to go with it, this alone could hardly have constituted the suspicion of  criminal activity upon which the *Terry* stop was based.  Defendant also points to the report of an assault earlier in the day, but no detail is provided that might trigger the need for the search.  Without more, searching the van, even if it can be deemed "successful" for uncovering the firearm, appears to have accomplished nothing.  Whatever Roegner's articulable suspicions might have been, they were seemingly satisfied by merely talking to Plaintiff, and certainly not by the search.

Of course, Defendant asserts that Plaintiff consented to the search, but because Plaintiff denies this and Defendants make no effort to show that they otherwise had probable cause for the search, the Court must conclude that there was no legal basis for the search.

In the context of qualified immunity, the question becomes not whether probable cause actually existed but whether it arguably existed, that is, whether under the circumstances a reasonable officer could have believed that probable cause existed.  *See*

*Swint v. City of Wadley, Ala.*, 51 F.3d 988, 996 (11th Cir. 1995) (citing *Moore v. Gwinnett County*, 967 F.2d 1495, 1497 (11th Cir. 1992)). This is out of recognition that situations may arise where the officer mistakenly but reasonably thought probable cause to exist. *Id.* Under the facts of this case, the Court must likewise conclude that Defendant is not entitled to qualified immunity. Defendant, relying as he does on the assertion that Plaintiff consented to the search, does not seriously contend that probable cause existed, and in any event no officer could reasonably conclude that such the pointless search performed in this case could be justified under the circumstances.

### 3. First Amendment Claim

Plaintiff next claims that Defendant Roegner's actions amounted to a retaliation against the exercise of her right to free speech in violation of the First Amendment. "To state a claim for retaliation for the exercise of First Amendment rights a plaintiff must establish that: (1) the speech or act was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected the protected speech; and (3) a causal connection existed between the retaliatory conduct and the adverse effect on speech." *Bethel v. Town of Loxley*, 221 Fed. Appx. 812, 813 (11th Cir. 2006) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)). While an individual need not have been actually deprived of his or her First Amendment rights in order to establish an actionable claim, the alleged deprivation must be more than a "de minimis inconvenience" to the exercise of those rights. *Id.* To establish an

adverse effect, the offensive conduct must be such that it "would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Id.* (quoting *Bennett*, 423 F.3d at 1250). "The effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable." *Bennett*, 423 F.3d at 1254 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). Thus, a successful claim "depends not on the denial of a constitutional right, but on the harassment [one] receive[s] for exercising [her] rights." *Bennett*, 423 F.3d at 1253.

Plaintiff is found to have fairly alleged that she was stopped and harassed for the exercise of her First Amendment rights. While Defendant Roegner again asserts that the investigative stop was reasonable and that the search was with her consent, as discussed above, the Court finds that she was detained and searched without proper justification. Moreover, Defendant Roegner's own assertions indicate that Plaintiff spoke with him relatively calmly, expressed no enmity against him or any other local ATF agent, and merely wished to discuss the Waco incident. Under these circumstances, Roegner's admonishment to Plaintiff to remove the writing from her van implies that her exercise of free speech provided the impetus for the stop. *See Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 823 (6th Cir. 2007). The Court finds these circumstances to align with prevailing case law finding a violation of the First Amendment. *See id.* at 821-22; *Keenan v. Tejeda*, 290 F.3d 252, 259 (5th Cir. 2002) (cited with approval in *Bennett*, 423

F.3d at 1255).  It is also beyond dispute that actions taken in retaliation for an individuals exercise of First Amendment rights is in violation of clearly established law such that government officials are not entitled to qualified immunity.  *See Bennett*, 423 F.3d at 1255-56.

### 4. False Imprisonment Claim

Plaintiff next raises a claim of false imprisonment based on Officer Roegner's investigative stop and alleged detention of her.  A constitutional claim of false imprisonment requires that the plaintiff show "(1) intent to confine, (2) acts resulting in confinement, and (3) consciousness of the victim of confinement or resulting harm."  *Ortega v. Christian*, 85 F.3d 1521, 1526 n.2 (11th Cir. 1996).  Defendant asserts that there was no intent to confine because Plaintiff was not arrested, was informed that she was free to leave, and was not prevented from speaking with the local news media when they arrived.  However, Plaintiff denies these assertions, save that she was able to speak with the media, and as has already been determined, she was detained pursuant to the *Terry* stop and searched.  Under Plaintiff's version of the facts, the Court cannot find that there was no intent to confine and is therefore unable to grant summary judgment as to her claim of false imprisonment.

*5. Due Process Claim*

Finally, Plaintiff asserts that Roegner's actions infringed upon her Fourteenth Amendment right to due process. However, where as here a claim is raised under the specific protections of the Fourth Amendment, the claim should be pursued under that amendment and not the more generalized protections of the Due Process Clause of the Fourteenth Amendment. *See Tinney v. Shores*, 77 F.3d 378, 381 (11th Cir. 1996) (citing *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 817, 127 L.Ed.2d 114 (1994) and *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989)). Accordingly, the Court finds that Plaintiff's due process claim is subsumed under her Fourth Amendment claim and is therefore not independently actionable.

B. Claims against Defendant United States

*1. Discretionary Function Exception*

Next, Plaintiff brings claims against the Defendant United States under the Federal Tort Claims Act. 28 U.S.C. § 1346(b). Plaintiff claims false imprisonment, negligence, intentional infliction of emotional distress, and invasion of privacy.[4]

However, the Defendant United States asserts that it is not liable based upon Agent Roegner's actions because of the "discretionary function" exception to FTCA liability.

---

[4] As Defendant points out, because the FTCA is a vehicle for suing the federal government only in situations where a private person would be liable under the law of the state where the injury occurred, constitutional tort claims are not cognizable under the FTCA. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 477-78, 114 S.Ct. 996, 1001-02 (1994). In seeming recognition of this, Plaintiff raises only claims under Florida law against the United States.

Under 28 U.S.C. § 2680(a), the FTCA does not apply to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

In analyzing whether this exception applies:

> First, we examine the nature of the challenged conduct and determine whether it involves an element of judgment or choice.  Second, if the challenged conduct involves an element of judgment or choice, we determine whether the judgment or choice is grounded in considerations of public policy because the purpose of the exception is to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.

*Mesa v. United States*, 123 F.3d 1435, 1437-38 (11th Cir. 1997) (citations and quotations omitted).

Defendant argues that procedures and considerations attendant to a Fourth Amendment situation such as in this case involve the exercise of significant discretionary choice on the part of law enforcement, and therefore the exception applies.  In *Mesa*, it was claimed that government agents negligently failed to properly identify the subject of an arrest warrant and that once inside the residence where the seizure occurred, they failed to release the misidentified individuals when they should have realized the error.  In this situation, the Court "readily conclude[d] that the decisions regarding how to locate and identify the subject of an arrest warrant and regarding whether the person apprehended is in fact the person

named in the warrant are discretionary in nature and involve an element of judgment or

choice." *Id.* at 1438.  The first prong of the "discretionary exception" test having been

satisfied, the court then found that concerns as to how to locate and identify suspects under

an arrest warrant were grounded in policy considerations:

> For example, in deciding how extensively to investigate the
> location and identity of the subject, agents may weigh the
> urgency of apprehending the subject in light of such factors as
> the potential threat the subject poses to public safety and the
> likelihood that the subject may destroy evidence. A desire to
> keep the investigation secret – for tactical reasons, to protect
> confidential sources, to protect the agents involved, or for other
> reasons-may also factor into the decision as to how to locate and
> identify the subject of a warrant.  In addition, agents may
> consider their available resources and decide how to allocate
> those resources among the many investigations for which they
> are responsible.  All of these factors indicate that the decision
> regarding how to locate and identify the subject of an arrest
> warrant is fundamentally rooted in policy considerations, and
> that judicial second-guessing of this decision thus is not
> appropriate.

*Id.*  Likewise, the court held that considerations regarding the type or length of detention and

questioning of suspects were within the sphere of policy matters:

> For example, in making such a determination, the agents may
> consider the possible repercussions of erroneously deciding that
> the person they apprehended is not in fact the person named in
> the warrant and letting that person go free.  Such an erroneous
> decision could potentially create a serious danger to public
> safety, and could also pose a threat to the agents involved in
> executing the warrant if the freed subject decided to retaliate
> against the agents.   Additionally, the agents involved in
> executing the warrant may consider the fact that if they
> mistakenly free the person detained, the person may destroy
> evidence or may flee and thus evade or make more difficult

> future capture and prosecution.  All of these considerations are
> rooted in policy considerations.

*Id.* at 1438-39.

This Court similarly finds that the actions taken in the instant case involved judgments and choices that were discretionary in nature and reflected matters of public policy.  If the sort of activity found in *Mesa* was readily found to be the result of discretionary choices by law enforcement, then the activity in the instant case seems even more so.  After all, *Mesa* involved the relatively concrete, ministerial activity involved in determining the correct identity of persons, whereas the instant case is more bound up with "grey area" issues such as the assessment of criminal activity, measurement of danger, and evaluation of the associated First Amendment issues.  Equally, these considerations are of the same type as those discussed in *Mesa*, and therefore similarly stem from matters of public policy.  Accordingly, the Court finds this case to meet the "discretionary function" exception to FTCA liability.

Unlike *Mesa*, however, one of Plaintiff's claims against the government in the instant case is one of false imprisonment, which is one of the causes of action that are specifically *included* by statute as giving rise to FTCA liability.  Under 28 U.S.C. § 2680(h):

> The provisions of this chapter and section 1346(b) of this title
> shall not apply to . . . Any claim arising out of assault, battery,
> false imprisonment, false arrest, malicious prosecution, abuse of
> process, libel, slander, misrepresentation, deceit, or interference
> with contract rights: *Provided*, That, with regard to acts or
> omissions of investigative or law enforcement officers of the
> United States Government, the provisions of this chapter and

> section 1346(b) of this title shall apply to any claim arising, on
> or after the date of the enactment of this proviso, out of assault,
> battery, false imprisonment, false arrest, abuse of process, or
> malicious prosecution. For the purpose of this subsection,
> "investigative or law enforcement officer" means any officer of
> the United States who is empowered by law to execute searches,
> to seize evidence, or to make arrests for violations of Federal
> law.

Thus, whereas Plaintiff's claims of invasion of privacy, negligence and intentional infliction of emotional distress are subject to the "discretionary function" exception, her claim of false imprisonment is specifically allowed. *See generally Brown v. United States*, 653 F.2d 196, 199 -200 (5th Cir. 1981).

The United States separately contends that Plaintiff's claim of false imprisonment should be dismissed on the merits. False imprisonment under Florida law "is the unlawful restraint of a person against his will, the gist of which is the unlawful detention of the plaintiff and the deprivation of his liberty." *Maybin v. Thompson*, 606 So. 2d 1240, 1241-1242 (Fla. 2nd DCA 1992) (citing *Johnson v. Weiner*, 155 Fla. 169, 171 (Fla. 1944)). The detention must have been "unreasonable and unwarranted under the circumstances." *Rivers v. Dillards Dep't Store*, 698 So. 2d 1328, 1331-1332 (Fla. 1st DCA 1997). As detailed in the discussion of Plaintiff's Fourth Amendment claims, the facts of this case as construed in her favor show that her detention was unreasonable under the circumstances. Her state claim of false imprisonment is therefore not subject to summary judgment.

## IV. SUMMARY

The Court's ruling in this matter may be summarized as follows, and IT IS HEREBY

ORDERED:

1. Defendant Craig W. Roegner's Motion for Summary Judgment (Doc. 27) is **GRANTED** only with respect to Plaintiff's Count One claim of a violation of her rights to Due Process and is **DENIED** in all other respects.

2. Defendant United States of America's Motion for Summary Judgment (Doc. 51) is **DENIED** as to Plaintiff's state law claim of false imprisonment and is **GRANTED** in all other respects.

3. Defendant Unknown ATF Special Agents' (Doc. 53) motion for summary judgment is **DENIED** without prejudice so that Plaintiff may have an opportunity for discovery.

4. Plaintiff's Motion To Strike (Doc. 41) is **DENIED** for reasons stated in Defendant Roegner's response and in light of the instant order.

5. Plaintiff's Motions for Case Management Conference (Doc. 111) and for Leave to File Reply (Doc. 114) are **DENIED** as moot.

**ORDERED** on this 26th day of September, 2008.


_____ s/ _L. A. Collier_ _____
Lacey A. Collier
Senior United States District Judge